UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **Civil Action No. 4:17-cv-01616** |
| NOVAK DRUCE CONNOLLY BOVE & | § | |
| QUIGG LLP, | § | |
| Defendant. | § | |
| | § | |

---

**DEFENDANT NOVAK DRUCE CONNOLLY BOVE & QUIGG LLP'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF BMO HARRIS BANK N.A.'S
MOTION FOR SUMMARY JUDGMENT**

---

Moussighi Law

Monica M. Moussighi
Attorney-in-charge
State Bar No. 24074767
SD Bar No. 1125426
923 Queen Annes Rd.
Houston, TX 77024
Telephone: 832.807.3699
mmmoussighi@gmail.com

*Attorney for Defendant, Novak Druce Connolly Bove & Quigg LLP*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     OVERVIEW ......................................................................................................3

III.    STATEMENT OF FACTS ................................................................................6

        A.      The Terms of the Agreement are Clear Regarding Credit Losses and How
                They are to be Handled ............................................................................6

        B.      The Particular Term Regarding Credit Losses Remains in Place Despite a
                Program Change .......................................................................................8

        C.      Declaration of Zariph Price is Inadmissible .........................................8

IV.     ARGUMENT ...................................................................................................10

        A.      Legal Standards ......................................................................................10

                i.      Summary Judgment ......................................................................10

                ii.     Written Contracts ........................................................................11

        B.      The Evidence Establishes a Contract Existed, Therefore Equitable Relief
                is Inappropriate ......................................................................................13

        C.      As the Existence of a Contract is Not Disputed, the Agreement Must be
                Enforced as Written ...............................................................................14

        D.      Evidence Establishes That Novak Druce was Harmed by BMO's
                Disclosure of Confidential Agreement .................................................16

V.      CONCLUSION AND REQUEST FOR RELIEF ...........................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Academy Corp. v. Interior Buildout & Turnkey Constr., Inc.*,
   21 S.W.3d 732 (Tex.App.-Houston [14th Dist.] 2000, no pet.)............................................12

*Bryan v. Citizens Nat'l Bank in Abilene*,
   628 S.W.2d 761 (Tex. 1982).................................................................................................12

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548 (1986) .................................................................................10

*Coghlan v. Wellcraft Marine Corp.*,
   240 F.3d 449 (5th Cir. 2001) ..............................................................................................12

*de la O v. Housing Auth. of City of El Paso, Texas*,
   417 F.3d 495 (5th Cir. 2005) .................................................................................................9

*DeClaire v. G & B McintoshFamily Ltd. P'ship*,
   260 S.W.3d 34 (Tex. App.-Houston [1st Dist.] 2008, no pet.)............................................11

*Edwards v. Mid- Continent Office Distribs., L.P.*,
   252 S.W.3d 833 (Tex. App.-Dallas 2008, pet. denied) ......................................................11

*Estremera v. United States*,
   442 F.3d 580 (7th Cir. 2006) .................................................................................................9

*Fortune Prod. Co. v. Conoco, Inc.*,
   52 S.W.3d 671 (Tex. 2000)..................................................................................................11

*Fowler v. U.S. Bank Nat'l Ass'n*,
   2 F. Supp. 3d 965, 983 (S.D. Tex. 2014) (Lake, J.) ..........................................................12

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
   832 S.W.2d 39 (Tex.1992) ...........................................................................................11, 12

*Joe Regueira, Inc. v. Am. Distilling Co.*,
   642 F.2d 826 (5th Cir. 1981) .................................................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ......................................................11

*Nicol v. Gonzales*,
   127 S.W.3d 390 (Tex. App.-Dallas 2004, no pet.)......................................................14, 16

*Oliver v. Scott*,
   276 F.3d 736 (5th Cir.2002) ...................................................................................8

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   120 S. Ct. 2097 (2000) ........................................................................................10

*Smith v. State*,
   96 S.W.3d 377 (Tex. App.-Amarillo 2002, pet. ref'd) ........................................11

*Threadgill v. Farmers Ins. Exch.*,
   912 S.W.2d 264 (Tex. App.-Dallas 1995, no writ) ..............................................11

*TransAmerica Natural Gas Corp. v. Finkelstein*,
   933 S.W.2d 591 (Tex. App.—San Antonio 1996, writ denied)......................12, 13

*Vortt Exploration Co. v. Chevron U.S.A., Inc.*,
   787 S.W.2d 942 (Tex. 1990).............................................................................11, 12

*Wells Fargo Bank, Minn., N.A. v. N. Cent. Plaza I, L.L.P.*,
   194 S.W.3d 723 (Tex. App.-Dallas 2006, pet. denied) ........................................14

*Woodard v. Sw. States, Inc.*,
   384 S.W.2d 674 (Tex. 1964)..................................................................................11

**Statutes**

Texas Deceptive Trade Practices Act ............................................................................2

**Other Authorities**

Fed. R. Civ. P. 5.2(a)......................................................................................................2

Fed. R. Civ. P. 56(a)....................................................................................................10

Fed. R. Civ. P. 56(c)(4)..............................................................................................8, 9

Fed. R. Civ. P. 56(e)......................................................................................................8

Fed. R. Civ. P. 56(f)......................................................................................................6

Fed. R. Evid. 801(c)......................................................................................................9

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **Civil Action No. 4:17-cv-01616** |
| NOVAK DRUCE CONNOLLY BOVE & | § | |
| QUIGG LLP, | § | |
|     Defendant. | § | |
| | § | |

---

### DEFENDANT NOVAK DRUCE CONNOLLY BOVE & QUIGG LLP'S MEMORANDUM IN OPPOSITION TO PLAINTIFF BMO HARRIS BANK N.A.'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Novak Druce Connolly Bove & Quigg LLP ("Novak Druce" or "Defendant") hereby submits its Memorandum in Opposition ("Opposition") to Plaintiff BMO Harris Bank N.A.'s ("BMO" or "Plaintiff") Motion for Summary Judgment ("MSJ") (Dkt. 67) filed May 14, 2018 pursuant to an agreed Motion to Extend Dispositive Motions Deadline which was ultimately entered May 29, 2018 (Dkt. 69).  On June 1, 2018, Novak Druce filed its Unopposed Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment (Dkt. 71) by one week which is through and includes June 11, 2018.  Novak Druce reasserts that request, and under Defendant's Unopposed Motion for Extension of Time, respectfully submits this Opposition showing its basis for opposing Plaintiff's MSJ.

## I.    <u>INTRODUCTION</u>

Throughout this present litigation, BMO has characterized this case as a simple two-party contract case, stating that Novak Druce has breached its contract with BMO by failing to repay various charges incurred on Novak Druce's Diners Club Account ("Novak Druce Account").

Yet, now through its MSJ, BMO is seeking summary judgment on claims of "implied breach of contract" [sic, breach of implied contract], quantum meruit and/or money had and received, distinctly stepping back from the explicit written contract that BMO has asserted in its "simple" contract case.  In contrast, Novak Druce asserts that the explicit written contract terms control BMO's claims, which precludes BMO's reliance on either an implied contract or request for equitable relief.  This dispute on what contract controls and the meaning of the contractual terms are material and require BMO's MSJ to be denied.

This is a case in which BMO purchased the Diners Club Card portfolio from Citibank, including the Novak Druce Account.  The Novak Druce Account has provisions unique to Citibank and Novak Druce because of a larger banking relationship at the time of the account's inception.  BMO acknowledges such Citibank relationship and provisions in their MSJ.  These unique provisions (which will be discussed in more detail below) dictate the repayment rights and obligations of Novak Druce.  As will be discussed more fully below, under the express written terms of the contract governing the Novak Druce Account, Novak Druce does not owe BMO the alleged charges which are the subject of this summary judgment motion.  No subsequent program change, no manipulation of the facts by BMO, or anything else that BMO may say or do can obviate the repayment provisions of the Novak Druce Account.

Furthermore, BMO flagrantly disregarded its fiduciary duty to its account holder, Novak Druce, when it purposefully disclosed confidential information of Novak Druce in its public filings in violation of at least the Texas Deceptive Trade Practices Act and Fed. R. Civ. P. 5.2(a).  BMO has retroactively tried to seal documents and confidential business information that it wrongfully put into the public domain.  This action has caused harm to Novak Druce at least in its rights under the contract to receive its attorneys fees for such a breach.

Therefore, there exists material fact issues that remain unresolved making summary judgment inappropriate. These material disputed facts include: (1) what contract governs the relationship between BMO and Novak Druce; (2) the scope of the Diners Club Commercial Card Agreement ("Agreement" or "Novak Druce Agreement") between Novak Druce and Citibank USA, N.A. ("Citibank") and later BMO; (3) BMO's lack of an implied contract or ability to seek equitable relief due to the existence of the Novak Druce Agreement; and (4) harm caused to Novak Druce due to BMO's breach of the Agreement in placing confidential business information of Novak Druce into the public domain.

## II.   OVERVIEW

BMO, throughout this present litigation, has repeatedly set forth that this is a simple contract case, and that Novak Druce has breached its contract with BMO by failing to repay various amounts incurred on the Novak Druce Account.  BMO has placed into evidence by way of its pleadings and the corporate declaration of a BMO senior manager the actual contract entered with Novak Druce, which is set forth in the Agreement (Dkt. 67-6, Exhibit E-1 to the MSJ).  **Novak Druce has never denied the contract it entered as represented in the Agreement**.  Rather, Novak Druce has consistently sought, and continues to seek, adherence to the express written terms of its contract as originated with Citibank and continued by assignment to BMO.  Without doubt, there is a written contract found in the Agreement.

Novak Druce seeks the protections afforded by its contract — an actual written contract, the terms of which are framed in the words of the contract itself and were agreed upon when entered into more than a decade ago— and not a contract as now urged by BMO to be either an implied contract or a contract constructed based upon imposition of equitable rights; rights which are not allowed for when a written contract is present, as is the case in the instant litigation.

Simply put, the contract (Agreement) is not in dispute.  What **is** in dispute is the rights of Novak Druce **under** that written contract.

Rather than this being the simple contract case as depicted by BMO, the instant litigation has now developed into a more complex case that involves a shifting sands approach to the claims and surrounding facts which BMO alters at will in response to Novak Druce's efforts at seeking compliance with its Agreement.  BMO, in its zeal to disregard the contractually agreed terms of the Agreement which are favorable to Novak Druce, has breached the very contract it is attempting to enforce, by disclosing and causing its counsel to publicly disclose confidential and protected banking and financial information of Novak Druce, as well as potentially exposing confidential business information and commercial strategies of third parties. All such actions of BMO are in violation of the underlying sued upon Agreement, as well as various rules and statutes.

To facilitate an understanding of the contractual relationship between BMO and Novak Druce as embodied in the Agreement, all that is required to be known is that:

1. The Novak Druce Diners Club Card Agreement is an existing and express written contract between the Parties, and which has been acknowledged throughout by BMO [Dkt. 67-5 at ¶3; Dkt. 67-6, Exhibit E-1 to the MSJ].

2. The terms of this written contract between the Parties dictate the relationship and the terms of the entire contract are to be considered in determining which terms control, and BMO has only contended that the only change to this existing contract was a Program Change in August 2011 which deleted the need to obtain the prior written consent of Novak Druce to an assignment of its account [Ex. A, attached hereto].

3. The last entered Addendum to the Novak Druce Diners Club Card Agreement, dated July 16, 2007, is by its terms ultimately controlling as to the entire Novak Druce Diners Club Card Agreement.

4. BMO has placed the entire Novak Druce Diners Club Card Agreement into evidence, which includes the Addendum and BMO has plead that this contract controls and is what it has based its claim upon in the filed pleadings [Dkt. 67-6, Exhibit E-1 to the MSJ].

Understanding this, it is not possible for BMO to seek the relief which it does by way of its MSJ as the express written contract as found between the Parties specifically precludes the granting of relief based upon either an implied contract or under any equitable relief theory such as quantum meruit and money had and received as presently claimed.

Further, BMO has consistently failed to address any Novak Druce concerns over BMO's lack of adherence to the Agreement, including adherence to the confidentiality provisions found in its contract; and importantly, the contractual provisions that absolutely discharge Novak Druce from any repayment obligation for all charges incurred on its Individually Billed Diners Club Cards, which comprise the totality of all charges incurred by Novak Druce through use of its corporate account, such use acknowledged by BMO in its Price Declaration (Dkt. 67-5 at ¶6).

Given the above, which will be fully discussed below, together with the numerous contradictory statements and facts presented by BMO as set forth in its MSJ that will be likewise discussed, such material facts are more than controverted as to the claims of BMO which renders granting the relief sought in its MSJ an impossibility at this juncture. However, as too will be shown, the controverted material facts which render the relief sought by BMO an impossibility, are equally uncontroverted with respect to certain positions of Novak Druce, which does merit

summary relief being granted by the Court in favor of Novak Druce, specifically with a finding that Novak Druce is discharged from any repayment obligation pursuant to the express terms of its written contract embodied in its Agreement.  *See* Fed. R. Civ. P. 56(f) (court may grant summary judgment for a nonmovant).

### III.  STATEMENT OF FACTS

A. **The Terms of the Agreement are Clear Regarding Credit Losses and How They are to be Handled**

The Agreement that Novak Druce entered into on July 16, 2007 with Citibank had several additional negotiated terms, found in the Addenda.  (Dkt. 8-1 at 8-12).  These included various terms regarding waived annual membership fees, foreign transaction fees, spending limits, and the like that are addressed in Addendum A (Dkt. 8-1 at 8), as well as additional terms regarding incentive and credit loss calculations in the Diners Club Addendum. (Dkt. 8-1 at 9-12).

The Diners Club Addendum, at Section 2, notes that Novak Druce "selected the Individual Bill Card Program under the Corporate Agreement."  (Dkt. 8-1 at 9).  Section 4(b) sets out the method used to calculate credit losses.  Specifically, the Diners Club Addendum states that "[c]urrent credit losses are declared on all amounts due on an account ***when any portion of the account becomes 180 days past due***, deceased accounts and accounts in which the Customer or Cardmember has declared bankruptcy." (Dkt. 8-1 at 10, emphasis added).

The Credit Loss Calculation provision at Section 4(b) of the Diners Club Addendum has not been amended nor affected by the Program Change referred to by BMO and attached hereto as Ex. A.  BMO pleads that the Agreement controls.  Novak Druce agrees that Section 4(b) controls as part of the Agreement, and accordingly, BMO has waived collection of any claimed balance from Novak Druce.

6

As Novak Druce had no agreement otherwise, any credit loss that exceeded the incentives "*will not be the responsibility of Customer*," Novak Druce.  (Dkt. 8-1 at 10, emphasis added). BMO has, to date, not calculated, nor provided Novak Druce with the incentive amounts that BMO itself owed to Novak Druce on the charges made during that time period.  Therefore, even the suggested and varying numbers from BMO regarding how much Novak Druce owed are incorrect.  That the alleged amounts that Novak Druce owes BMO have varied between the initial pleadings, various declarations, and this MSJ, none having taken into account the incentives owed by BMO, is another reason that BMO is not entitled to the relief it seeks as there is a dispute as to the balance calculation of the amount alleged to be owed.[1]

However, even if BMO accurately calculates the incentives it owed Novak Druce, and credits those against the charges Novak Druce made, the outcome would not change.  Based on the Credit Loss Calculation provision at Section 4(b) of the Diners Club Addendum, whatever amount remained after the incentives were applied to the balances would *still* not be owed by Novak Druce as the accounts are 180 days past due, and based on the very clear negotiated terms of the Agreement, the excess over the incentives is not the responsibility of the customer, Novak Druce.

---

[1] In its Second Amended Complaint, BMO seeks approximately $566,000 in damages.  The Account Statement they attach to the Price Declaration shows approximately $551,000 owed. Finally, the Motion for Summary Judgment is requesting approximately $544,000 in damages from Novak Druce.  However, none of these calculations take into account any incentives which may have been owed to Novak Druce under the Agreement and which should have been credited towards these balances.  Novak Druce has never admitted that a debt is owed Nonetheless, Novak Druce contends that whatever the remaining balance is after incentives are calculated, the balance owed by Novak Druce would still drop to zero after 180 days.  Additionally, BMO, in their MSJ (Dkt. 67 at 9), erroneously states that "**Novak Druce** stipulates that its damages are $544,870.59..." (emphasis added).  Novak Druce has never stipulated as such.

B.  **The Particular Term Regarding Credit Losses Remains in Place Despite a Program Change**

BMO has pleaded that the Agreement was assigned to it by Citibank, and attached to those pleadings such Agreement and its controlling Addenda. Moreover, BMO has pleaded full compliance with the Agreement and its Addenda.

Novak Druce does not dispute that a valid Agreement exists. Specifically, Novak Druce acknowledges that the Diners Club Commercial Card Agreement has been in force since 2007. The "Important Notice of Program Change" (attached herein as Ex. A) does not change the terms of the Diners Club Addendum. In fact, the Program Change is directed to Novak Druce's Corporate Individual Bill Cards and encompasses the Credit Loss Provisions of the Diners Club Addendum.

C.  **Declaration of Zariph Price is Inadmissible**

Finally, the Declaration of Zariph Price in Support of Plaintiff BMO Harris Bank N.A.'s Motion for Summary Judgment (Dkt. 67-5, "Price Declaration") is fraught with impermissible hearsay, and portions of the declaration should be struck for containing conclusory arguments instead of statements of fact. Additionally, Mr. Price does not, and cannot, declare that he has personal knowledge of events that transpired between the date of the contract in 2007 and the date that he began his employ with BMO in 2011.

Declarations offered in support of a motion for summary judgment are governed by the requirements of Rule 56, Federal Rules of Civil Procedure, which provides that, "[a] declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(C)(4). A statement in a declaration must be stricken if it is

a conclusory argument rather than a statement of fact, or when the declaration is not based on personal knowledge. *See Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir.2002).

In determining whether an issue of material fact exists, a court may only consider evidence that would be admissible at trial. *Joe Regueira, Inc. v. Am. Distilling Co.*, 642 F.2d 826, 829 (5th Cir. 1981); *see* Fed. R. Civ. P. 56(e). "Statements made on information and belief do not constitute proper summary judgment evidence." *de la O v. Housing Auth. of City of El Paso, Texas*, 417 F.3d 495, 501 (5th Cir. 2005).

Mr. Price, in his declaration, has sworn that he is "personally familiar with the relationship between BMO and Novak Druce" and that "[a]ll facts set forth herein are true and correct." Dkt. 67-5, Price Decl. at ¶¶1-2. However, poignantly, nowhere does Mr. Price swear that he has personal knowledge of all of the facts set forth in the declaration, because he cannot. The Diners Club Commercial Card Agreement was signed between Novak Druce and Citibank in 2007. The assignment of that Agreement to BMO was made in 2009. Mr. Price was not even employed by BMO until 2011. Therefore, where Mr. Price claims that he is "also familiar with the [2009] assignment of the Diners Club Program from Citibank to BMO and the assignment of Novak Druce's Diners Club Commercial Account from Citibank to BMO," he is doing so without personal knowledge, and all such references to that assignment in his declaration must be stricken. Dkt. 67-5, Price Decl. at ¶2. A party cannot acquire first-hand personal knowledge of a matter through review of discovery and pleadings. *See Estremera v. United States*, 442 F.3d 580, 584 (7th Cir. 2006); Fed. R. Civ. P. 56(c)(4). As such, paragraphs 2, 4, 5, and 9 of the Price Declaration, which refer to the time periods before Mr. Price were employed by BMO, should be stricken from the declaration for lack of personal knowledge.

Paragraphs 2, 4, 5, 7, 8, and 10 of the Price Declaration are inadmissible hearsay, which cannot be considered on a motion for summary judgment. Under the Federal Rules of Evidence, hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Specifically, paragraphs 2, 4, 5, 7, 8, and 10 of the Price Declaration are hearsay because they are out-of-court statements being offered to prove the conduct of the parties and amounts owed. There are no business records exceptions available to BMO or Mr. Price in this instance. The Account Statement referred to by Mr. Price at paragraphs 7 and 8, and attached to the Price Declaration as Exhibit E-3 (Dkt. No 67-8), was not a record kept by BMO in the ordinary course of business. It is not an account statement that Novak Druce received through the course of their dealings with BMO. It was a report specifically compiled for the purposes of this litigation, and therefore is inadmissible hearsay. Both that report, as well as references to it in the Price Declaration, should be stricken from the record. Therefore, the amount alleged by BMO to be owed by Novak Druce in paragraph 10 is also inadmissible hearsay. Accordingly, Novak Druce respectfully requests that the Court strike paragraphs 2, 4, 5, 7, 8, and 10 from the Price Declaration.

## IV.   ARGUMENT

### A.   Legal Standards

#### i.   Summary Judgment

Summary judgment is appropriate only where the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists as to the evidence of a claim or defense or the part of a claim or a defense and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue as to the material facts. *Id.* at

322-25.  "The court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2110 (2000).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, a court is required to view all facts in the light most favorable to the nonmoving party and any inconsistencies are to be resolved in the nonmoving party's favor.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### ii.    Written Contracts

The existence of an express contract covering the same subject matter precludes finding the existence of an implied contract, whether in fact or in law.  *See Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964); *Threadgill v. Farmers Ins. Exch.*, 912 S.W.2d 264, 268 (Tex. App.-Dallas 1995, no writ).  "Where the parties expressly state the terms of an agreement, they create an express contract and are bound by it to the exclusion of conflicting implied terms." *Smith v. State*, 96 S.W.3d 377, 384 (Tex. App.-Amarillo 2002, pet. ref'd) (*citing Haws & Garrett Gen. Contractors v. Gorbett Bros. Weld. Co.*, 480 S.W.2d 607, 609 (Tex. 1972); *Woodard*, 384 S.W.2d at 675).

Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, such as unjust enrichment.  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *DeClaire v. G & B McintoshFamily Ltd. P'ship*, 260 S.W.3d 34, 49 (Tex. App.-Houston [1st Dist.] 2008, no pet.).  This is because parties should be bound by their express agreements, and when a valid agreement already addresses the matter, recovery under an equitable theory is generally

11

inconsistent with the express terms of the agreement. *Conoco*, 52 S.W.3d at 684; *see also Edwards v. Mid- Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App.-Dallas 2008, pet. denied) ("The doctrine of unjust enrichment applies the principles of restitution to disputes that are not governed by a contract between the parties.").

"Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992). The doctrine of quantum meruit requires the plaintiff to establish: "1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Id.* However, when the summary judgment evidence establishes the existence of a contract between the parties, recovery under quantum meruit is unavailable. In general, recovery under quantum meruit is limited to only when there is no express contract covering the services or materials furnished. *Vortt Exploration*, 787 S.W.2d at 944; *Academy Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 741 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

A money had and received claim is "'equitable in nature'" and "'belongs conceptually to the doctrine of unjust enrichment.'" *Fowler v. U.S. Bank Nat'l Ass'n*, 2 F. Supp. 3d 965, 983 (S.D. Tex. 2014) (Lake, J.) (quoting *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162 (Tex. 2007), and *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied)). To establish a claim for money had and received, BMO must show that the "defendants hold money which in equity and good conscience belongs to him." *Id.* at 983.

Under Texas law, unjust enrichment "characterizes the result of failing to make restitution or benefits received under circumstances giving rise to an implied or quasi-contract."

*TransAmerica Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.—San Antonio 1996, writ denied).  The purpose for the claim is to prevent unconscionable loss to the payor and unjust enrichment to the payee. *Bryan v. Citizens Nat'l Bank in Abilene*, 628 S.W.2d 761, 763 (Tex. 1982).  However, an unjust enrichment claim "is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001) (applying Texas law); see also *Finkelstein*, 933 S.W.2d at 600.

       B.     **The Evidence Establishes a Contract Existed, Therefore Equitable Relief is Inappropriate**

Rather than either the implied or equitably based contract and relief sought by BMO in its MSJ, an express written contract controls the obligations between Novak Druce and BMO. While the express written contract originated with Diners Club under the ownership of Citibank, the contract was assigned to BMO and provides to Novak Druce certain rights that negate any demand of equitable relief sought by BMO.  In fact, BMO itself in its Motion states that "[t]here is no genuine dispute regarding the existence of this contract [the Diners Club Card Agreement] between BMO and Novak Druce or the material terms of the contract..." [Dkt. 67 at 6].  This admission by BMO alone should bring about the denial of the equitable relief sought by its MSJ.

BMO is correct that the evidence establishes a valid contract.  Novak Druce does NOT dispute that the Agreement is a valid contract.  In fact, it is the very clear terms of that contract that Novak Druce points towards to dispute owing alleged amounts to BMO.  The existence of a contract has never been in dispute.

Given the express and consistent arguments of BMO, the relief which it now seeks by way of its MSJ based alternatively upon either (i) an **implied contract**, or (ii) **equitable relief**, is wholly inconsistent with the actual facts and evidence of this case, and allowing for **either**

**alternative relief** runs afoul of well-established and controlling law that negates such alternative relief when an actual express written contract is present.  As the only agreed aspects of facts or evidence in this litigation tie implicitly to the express written contract embodied in the Diners Club Agreement, the relief sought alternatively by BMO must fail.

C.   **As the Existence of a Contract is Not Disputed, the Agreement Must be Enforced as Written**

The existence of an Agreement is not disputed by the parties.  As such, the Agreement must be enforced as written.  *Wells Fargo Bank, Minn., N.A. v. N. Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex. App.-Dallas 2006, pet. denied); *Nicol v. Gonzales*, 127 S.W.3d 390, 394 (Tex. App.-Dallas 2004, no pet.).

The arguments by BMO that Citibank, which owned Diners Club in 2007, extended a credit line to Novak Druce and that Novak Druce commenced use of its Diners Club Card in 2007 is true, **and** each action between Citibank and Novak Druce becomes clear through the controlling Diners Club Addendum.  In each extension of credit negotiated and made between Citibank and Novak Druce, certain credit covenants were found which controlled the line of credit and overall debt exposure allowed Novak Druce .

The Diners Club Addendum made clear that the ***only program selected under the Diners Club Commercial Card Agreement*** was the Individual Bill Card Program. This is important as this is the provision that ultimately ties together the overall Citibank credit line extensions to Novak Druce, the Diners Club Commercial Card Agreement, and the Program Change alleged by BMO to control the assignment of the Novak Druce account to BMO.  Furthermore, the Individual Bill Card Program selection highlights why Novak Druce does not owe any amount claimed by BMO.

The controlling Diners Club Addendum dated July 16, 2007 is part of the Diners Club Commercial Card Agreement and includes various financial incentives and resulting discounts. In setting forth the financial incentives, the Diners Club Addendum specifies when such discounts or incentives will be applied to the account and also contains Credit Loss Calculation provisions. Pursuant to the arrangement reached with Diners Club at the inception of the Diners Club Commercial Card Agreement, these incentives and other related arrangements of the Credit Loss Calculation were reached to induce the use by Novak Druce of the Diners Club Cards. Moreover, the Diners Club balances did not impact the various credit covenants of Novak Druce's primary operating loans with Citibank, thereby further encouraging Novak Druce's use of Diners Club..

Regarding the Credit Loss Calculation provision at Section 4(b) of the Diners Club Addendum provided below (Dkt. 67-6 at 10, emphasis added), and to which there has been no alleged amendment and BMO pleads control, Novak Druce agrees that Section 4(b) of the Diners Club Addendum controls as part of the Diners Club Commercial Card Agreement, and accordingly, BMO has waived collection of any claimed balance from Novak Druce, the Customer.

4   <u>General Terms and Conditions for Incentives</u>

b.   <u>Credit Loss Calculation</u>
**Currently credit losses are declared on all amounts due on an account when any portion of the account becomes 180 days past due**, deceased accounts and accounts in which the Customer or Cardmember has declared bankruptcy. The timing of when credit losses are declared may change from time to time. Diners Club will notify Customer of any such change. In the final year of the Agreements, any incentives that are subject to reduction for credit losses will be paid eight (8) months after the termination date of the Agreements to permit calculation of final credit losses. **Diners Club will deduct credit losses up to the total amount of incentives that may be due. Credit losses on Individually Billed Corporate Cards in excess of incentives will not be the responsibility of Customer unless otherwise agreed**.

Therefore, as the provisions of the Agreement are clear with regard to Credit Loss Calculation, Novak Druce does not owe BMO any amount of money, and BMO's MSJ should be denied.

D.    **Evidence Establishes That Novak Druce was Harmed by BMO's Disclosure of Confidential Agreement**

The Indemnity provisions found in the Diners Club Addendum, along with the Confidentiality provisions found in the Novak Druce Diners Club Card Agreement, and in its Addendum, made clear that at a minimum Novak Druce is entitled to at least its attorneys' fees for the breach of the Confidentiality provisions by BMO. (Dkt. 8-1). Novak Druce is also entitled to its attorneys fees for defending this impermissible action brought by BMO under the Addendum. *Id.*

## V.    CONCLUSION AND REQUEST FOR RELIEF

Accordingly, Novak Druce asks the Court to:   deny BMO's Motion for Summary Judgment; grant summary judgment in favor of Novak Druce pursuant to its discretion, finding that Section 4(b) of the Diners Club Addendum to the Agreement relieved Novak Druce of the account balances; order that BMO take nothing against Novak Druce; and dismiss BMO's action with prejudice.

Dated:  June 11, 2018

Respectfully submitted,

MOUSSIGHI LAW

By: */s/ Monica M. Moussighi*
Monica M. Moussighi
Attorney-in-charge
State Bar No. 24074767
SD Bar No. 1125426
923 Queen Annes Rd.
Houston, TX 77024
Telephone: 832.807.3699
mmmoussighi@gmail.com

*Attorney for Defendant,*
*Novak Druce Connolly Bove & Quigg LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2018, a true and correct copy of the foregoing ***Defendant Novak Druce Connolly Bove & Quigg LLP's Memorandum in Opposition to Plaintiff BMO Harris Bank N.A.'s Motion for Summary Judgment*** was electronically filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties.  Parties may access this filing through the Court's CM/ECF system.


/s/ Monica M. Moussighi
Monica Moussighi